UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GEORGE PAPPAS,

      Plaintiff,

v.                                                    CASE No. 8:14-CV-1593-T-17TGW

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant.

_____

## REPORT AND RECOMMENDATION

The plaintiff in this case seeks judicial review of the denial of his

claim for Social Security disability benefits.[1]  Because the decision of the

Commissioner of Social Security is supported by substantial evidence and

does not contain reversible error, I recommend that the decision be affirmed.

I.

The plaintiff, who was fifty-eight years old at the time his

insured status expired and who has a high school education, has worked as a

_____

[1] This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998.  See also Local Rule 6.01(c)(21).

food service manager and has owned his own restaurant (Tr. 33, 34, 41, 42, 49). He filed a claim for Social Security disability benefits, alleging that he became disabled due to thyroid cancer, mental disorders, asthma, sleep apnea, arthritis, panic attacks, anxiety, depression, left shoulder rotator cuff, nausea, fatigue, and high blood pressure (Tr. 139, 157). The claim was denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that, as of the date the plaintiff was last insured on June 30, 2007, he had severe impairments of thyroid cancer, sleep apnea, left shoulder degenerative joint disease, and degenerative disc disease (Tr. 14). The law judge also considered several other mental and physical impairments, which she found were non-severe (Tr. 14-15). In particular, the law judge determined that the plaintiff's depression and anxiety "did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and w[ere] therefore nonsevere" (Tr. 15).

The law judge concluded that, with these impairments, the plaintiff had, as of the last date he was insured, the residual functional

capacity to perform light work, except he was limited to frequent reaching and overhead reaching with the left arm, and must avoid concentrated use of moving machinery and concentrated exposure to unprotected heights (Tr. 18). She further determined, based on the testimony of a vocational expert, that these limitations did not preclude the plaintiff from prior work as a food service manager as it is generally performed in the national economy (Tr. 23). Accordingly, the law judge decided that the plaintiff was not disabled through June 30, 2007, the date he was last insured. The Appeals Council let the decision of the law judge stand as the final decision of the defendant.

## II.

A. In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic

techniques." 42 U.S.C. 423(d)(3).  The Act provides further that a claimant is not disabled if he is capable of performing his previous work. 42 U.S.C. 423(d)(2)(A).  In this case, also, the plaintiff must show that he became disabled before his insured status expired on June 30, 2007 (Tr. 112).  42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

-4-

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. See 20 C.F.R. 404.1520. The initial question is whether the plaintiff is engaged in substantial gainful activity because, if so, the plaintiff will be found not disabled. 20 C.F.R.

404.1520(b).  If not, the next inquiry (step two) is whether a claimant has a severe impairment.  20 C.F.R. 404.1520(c).  An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities.  20 C.F.R. 404.1521(a).  If there is not a severe impairment, then a claimant is deemed to be not disabled.  20 C.F.R. 404.1520(c).

When an impairment is severe, but does not meet, or equal, a listing in Appendix 1 (step three), a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 404.1520(f).  If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in significant numbers in the national economy.  20 C.F.R. 404.1520(g).

## III.

The plaintiff argues that the law judge erred in finding that his mental impairments were non-severe and by omitting mental limitations from the determination of his residual functional capacity (Doc. 15, p. 2).  He

makes no argument based upon a physical impairment.   The plaintiff's contentions regarding his mental impairments are unmeritorious.

Initially, it is noted that the relevant evidence for this disability application is that which bears on the plaintiff's condition between August 2, 2005, the date he alleges he became disabled, through the date the plaintiff was last insured on June 30, 2007 (Tr. 112, 157).   There is little medical evidence in the record of the plaintiff's mental impairments during the alleged disability period.

A. The plaintiff argues first that the law judge erred in finding that his mental impairments were non-severe (Doc. 15, pp. 2-5, 12-16).[2] The regulations define a non-severe impairment as one that "does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. 404.1521(a).   The court of appeals has stated that "[a]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to

_____

[2] The plaintiff identifies at the beginning of his memorandum the law governing the determination of severe impairments, and places in a separate argument the evidence that purportedly supports that contention.   For proper analysis, these matters are addressed together.

interfere with the individual's ability to work, irrespective of age, education, or work experience." <u>Brady</u> v. <u>Heckler</u>, 724 F.2d 914, 920 (11th Cir. 1984).

The law judge acknowledged in the decision the plaintiff's diagnoses of major depressive disorder and anxiety, but found these impairments were non-severe (Tr. 15, 16). In doing so, the law judge recognized, and applied, the proper standards quoted above (Tr. 13, 15). Thus, the law judge explained that there are no objective signs and findings indicating that the plaintiff's mental impairments caused more than a minimal limitation in his ability to perform basic mental work activities for a continuous period of twelve months (<u>see</u> Tr. 14-16). In this regard, the law judge summarized the sparse medical evidence of mental impairments, and reasonably concluded that the record generally reflects only intermittent and vague complaints of low mood and energy. For example, the law judge noted (Tr. 16):

> On February 7, 2006, the claimant was treated at the emergency room for dyspnea; however, doctors diagnosed an anxiety reaction and insomnia and prescribed Ambien (Exhibit 3F/22-25). The March 29, 2006 notes show that [t]he claimant['s] mood improved and that his energy was back (Exhibit 5F/58-59). On June 13, 2006 endocronologist Lara

Levin, M.D. reported great improvement in the claimant's mood and energy (Exhibit 5F/55-56). The September 20, 2006 [note] showed that depression was an active problem, but there was no evidence of any treatment for this condition (Exhibit 5F/49-50). On February 6, 2007, Dr. Levin noted that anxiety and depression were active problems, but there were no complaints of active panic attacks or significant problems dealing with others noted in the record. The claimant was treated with Lexapro (Exhibit 5F/38-39).

These [mental] diagnoses are not supported by objective signs and findings. In fact, there were generally no psychological complaints in the treatment notes other than low mood and the record consistently showed that he was alert and oriented (Exhibit 5F). The claimant also received only minimal and conservative treatment, despite his allegations of very significant symptoms. Moreover, the claimant reports of self-isolation were not medically documented.

Further, there is no evidence of treatment from a mental health professional during the alleged disability period. In fact, a non-examining reviewing psychiatrist and a non-examining reviewing psychologist each stated that the evidence was insufficient to evaluate the plaintiff's claim of a mental impairment (Tr. 515, 532). The psychiatrist specifically noted that the

plaintiff's representative denied that there were any mental health sources prior to the date last insured (Tr. 515).

The law judge additionally stated that, to the extent that the plaintiff experienced severe mental symptoms, the plaintiff failed to show that they met the duration requirement (Tr. 16). See 20 C.F.R. 404.1509 (duration requirement is defined as a severe impairment that is expected to last 12 continuous months or result in death). Notably, the plaintiff testified that his mental impairments were precipitated by the diagnosis of thyroid cancer and thyroid surgeries, and the plaintiff successfully underwent surgery to remove the cancer at the beginning of the alleged disability period in August and September 2005, after which there is no cancer recurrence reflected in the record (Tr. 19).

Moreover, the law judge also considered the four broad functional areas used in evaluating mental disorders, and found that the plaintiff had only mild limitations in activities of daily living, social functioning, and concentration, persistence or pace (Tr. 16-17). In this regard, the law judge specified, among other things, the plaintiff's reports that he was able to do personal care activities, household chores, drive, shop in

stores, handle a banking account and regularly visit or speak on the telephone with friends (Tr. 17; see Tr. 172, 174-76).

The findings that the plaintiff had only mild limitations in activities of daily living, social functioning, and concentration, persistence or pace establish that the plaintiff did not have a severe mental impairment. See 20 C.F.R. 404.1520a(d)(1). Thus, in Cuthbert v. Astrue, 303 Fed. Appx. 697, 699 (11th Cir. 2008), the Eleventh Circuit acknowledged that, under the regulation, "[i]f the degree of limitation in the first three functional areas is rated as 'none' or 'mild,' and 'none' in the fourth area [of decompensation], the Commissioner generally concludes the impairment is not severe."

Moreover, not only is there no treatment by a mental health specialist, there is no opinion from a mental health source that the plaintiff's mental impairments were disabling or caused a work-related mental functional limitation during the pertinent time period. In sum, the law judge gave an ample and reasonable explanation for finding that the plaintiff's mental impairments were non-severe during the insured period.

Other than noting the law judge's analysis of the four broad functional areas, the plaintiff does not acknowledge, and certainly does not

undermine, the law judge's explanation, for finding that his mental impairments were non-severe (see Doc. 15, pp. 13-16). Rather, the plaintiff cites to evidence in the record which may support, but certainly did not compel the law judge to find, that the plaintiff had a severe mental impairment. See Adefemi v. Ashcroft, supra, 386 F.3d at 1027 (it is insufficient to merely identify evidence that could support a finding of disability; rather, the plaintiff must identify evidence that would compel the law judge to find mental disability because the law judge's resolution of conflicting evidence is entitled to deference); Lawton v. Commissioner of Social Security, 431 Fed. Appx. 830, 833 (11th Cir. 2011) ("While the record does contain some evidence that is contrary to the ALJ's determination, we are not permitted to reweigh the importance attributed to the medical evidence.").

Thus, the plaintiff points out his diagnoses of anxiety; panic disorder; and major depressive disorder, recurrent (Doc. 15, pp. 13, 14). However, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on h[is] ability to work."

Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005), quoting

McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). Therefore, these

diagnoses do not, in themselves, show that the plaintiff's mental impairments

were severe, especially considering the dearth of objective evidence

supporting such a finding.

The plaintiff also argues that a finding of a severe mental

impairment is supported by correspondence dated April 21, 2005, from his

cancer surgeon, Dr. Allen Cortez, who stated that the plaintiff took the news

of the cancer diagnosis very hard and that the plaintiff was "very nervous and

incredibly anxious" about having to undergo surgery (Doc. 15, p. 13; Tr.

580). The letter, which is not addressed to anyone in particular, vaguely

requests the recipient to "extend any and all consideration" to the plaintiff

(Tr. 581).

The law judge acknowledged that Dr. Cortez "wrote a letter ...

that the claimant had significant anxiety and stress due to his cancer and

surgeries.... However, there is no evidence in any of his medical records that

support this [mental] diagnosis" (Tr. 15-16; see Tr. 580-81). Thus, the law

judge did not find Dr. Cortez's conclusory comments probative, as they were

-13-

unsupported by his treatment records and, therefore, apparently based on the plaintiff's subjective reports.  See Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1159 (11th Cir. 2004) (treating physician's report "may be discounted when it is not accompanied by objective medical evidence").

Furthermore, Dr. Cortez's letter does not opine that the plaintiff had any specific work-related functional limitation, nor did it opine as to any long term mental impairment.   See 20 C.F.R. 404.1521(a) (a severe impairment significantly limits the claimant's mental ability to do basic work activities); 20 C.F.R. 404.1509 (defining the duration requirement as a severe impairment that is expected to last 12 continuous months or result in death). Rather, all that Dr. Cortez's letter indicates is that the plaintiff was experiencing anxiety in connection with his cancer diagnosis and treatment. Therefore, Dr. Cortez's correspondence does not show that the plaintiff had a severe mental impairment lasting at least 12 months, and it certainly did not compel the law judge to make such a finding.  See Adefemi v. Ashcroft, supra.

The plaintiff also cites to treatment notes of Dr. Jeffrey S. Lapid, a psychologist who saw the plaintiff over a three-week period in July 2005, before the start of the alleged disability period (Doc. 15, p. 13; Tr. 585-86). Dr. Lapid's treatment notes, which are mostly illegible, contain the plaintiff's subjective reports of, among other things, feeling worried and decreased energy in connection with the plaintiff's cancer diagnosis and business and IRS problems. Dr. Lapid's treatment notes indicate that, by the end of that month, the plaintiff's anxiety had decreased and he felt more in control (Tr. 586). Further, the plaintiff testified at the hearing that, "once I was taking the medicine [Lexapro], there was no need for me to go back and see [Dr. Lapid], just to follow up with my regular doctor on how I was feeling and they would determine if I had to go back to see him" (Tr. 45). There is no indication in the record that the plaintiff returned to Dr. Lapid.

During the brief treatment period, Dr. Lapid diagnosed the plaintiff with panic disorder and depression, but he did not opine that the plaintiff had any resulting mental functional limitation (Tr. 585-86). Furthermore, as indicated above, there was nothing in Dr. Lapid's treatment notes indicating any long-term mental impairment (id.). Therefore, the

-15-

plaintiff has not shown that Dr. Lapid's treatment notes compelled the law judge to find that the plaintiff had a severe mental impairment, or to incorporate into the plaintiff's residual functional capacity a particular mental functional limitation.[3]

Next, the plaintiff cites to the treatment records of his endocronologist, Dr. Lara Levin, who saw the plaintiff for thyroid cancer reviews and thyroid medication management (Doc. 15, pp.13-14; see Tr. 400-11). The plaintiff cites to records reflecting his subjective reports of low energy and/or low mood (see, e.g., Tr. 394, 410). However, on other occasions, the plaintiff told Dr. Levin that he felt well, with good mood and energy levels (Tr. 368, 385, 388). Furthermore, Dr. Levin did not opine that

---

[3]The plaintiff asserts in the penultimate paragraph of his 17-page memorandum that the law judge committed reversible error because she did not discuss in the decision Dr. Lapid's notes (Doc. 15, p. 16). This contention is meritless. Thus, the two pages of treatment notes which, as indicated, are mostly illegible, merely reference a three-week period of treatment prior to the alleged disability period, and are essentially cumulative of other record evidence (Tr. 585-86). See Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (the law judge does not need to cite to every piece of evidence as long as the decision shows that she properly considered the plaintiff's medical condition as a whole).

Furthermore, the decision refers to the plaintiff's testimony that he saw a psychologist weekly for a month (Tr. 16; see Tr. 47-48), which apparently was Dr. Lapid. In this regard, the law judge stated that "the . . . duration of treatment does not support a finding that the claimant's symptoms would have been at a severe level for at least a continuous period of 12 months" (Tr. 16). That finding is supported by substantial evidence, as Dr. Lapid's treatment of the plaintiff was very brief, and Dr. Lapid did not opine that the plaintiff had any long-term mental functional limitation.

the plaintiff had any resulting mental functional limitation as a result of his reported symptoms. Notably, Dr. Levin opined on more than one occasion that the plaintiff's fatigue and mood symptoms were likely related to thyroid hormone levels (see Tr. 380, 395, 399) and, thus, those symptoms were not indicative of a mental impairment. Therefore, Dr. Levin's treatment notes clearly did not compel a finding of a severe mental impairment, or the inclusion of a particular mental functional limitation in the plaintiff's residual functional capacity.

The plaintiff also focuses on his hearing testimony of debilitating mental limitations (Doc. 15, pp. 12-14). The law judge acknowledged in the decision the plaintiff's testimony that he was unable to work due to anxiety, depression, and panic attacks, and that the plaintiff did not want to be around anyone and would stay in his room all day (Tr. 15; 14; see Tr. 34, 37).

The law judge, however, found that the plaintiff's testimony was not fully credible, and gave a cogent explanation for that finding. Importantly, that credibility finding is unchallenged by the plaintiff. Therefore, the plaintiff cannot rely upon discredited evidence in arguing that the law judge should have found he had a severe mental impairment.

-17-

Finally, the plaintiff points to the opinion of Dr. Craig Orvieto, D.O. (Doc. 15, pp. 15-16), a family practitioner who completed on the plaintiff's behalf two Physical Residual Functional Capacity Questionnaires in which he opined that the plaintiff was essentially disabled due to his impairments (Tr. 547-51, 553, 575-79). Dr. Orvieto became the plaintiff's physician several years after the last date the plaintiff was insured.

In a Physical Residual Functional Capacity Questionnaire dated July 6, 2011, Dr. Orvieto opined that the plaintiff had several physical impairments, including arthritis, sleep apnea, and hypothyroidism; and he also listed diagnoses of anxiety and depression (Tr. 547). Dr. Orvieto opined that the plaintiff could sit and stand/walk for less than two hours each in a workday, and that he would be absent more than four days monthly due to his impairments (Tr. 549-50). Dr. Orvieto opined further that emotional factors contribute to the severity of the plaintiff's symptoms and functional limitations, that the plaintiff was incapable of even low stress jobs, and that the plaintiff's pain and other symptoms will interfere frequently with the attention and concentration necessary to perform even simple work tasks (Tr.

548, 551).  Dr. Orvieto asserted that the opined limitations existed since November 2005 (Tr. 551).[4]

Opinions from treating physicians should be given substantial or considerable weight unless there is good cause for not doing so.  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004).  Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The law judge considered Dr. Orvieto's opinion of extreme functional limitations, including that "the claimant's emotional factors contribute to his functional limitations and that his symptoms frequently interfere with his attention and concentration. He also noted that the claimant was incapable of even low stress jobs" (Tr. 23). As pertinent to the plaintiff's mental functional limitations, the law judge stated (id.):

> Dr. Orvieto noted that these limitations would apply as of November 2005 and that the claimant

---

[4]Dr. Orvieto repeated essentially the same opinions in a Physical Residual Functional Capacity Questionnaire dated February 15, 2012 (Tr. 575-79).

-19-

would miss more than four days a month of work (Exhibits 18F and 21F). I give this opinion little weight as it is not consistent with the evidence during the relevant period. First, Dr. Orvieto did not treat the claimant during the period relevant to this case and is not a psychiatrist, with specialized knowledge of mental health issues. Moreover, the medical evidence generally shows that the claimant ... had relatively conservative treatment of his symptoms that would not support Dr. Orvieto['s] overly restrictive opinion.

Thus, the law judge clearly stated good cause for discounting Dr. Orvieto's opinion of extreme mental limitations. Lewis v. Callahan, supra. Furthermore, that explanation is supported by substantial evidence.

In the first place, Dr. Orvieto's assessment is conclusory, and that alone provides a recognized basis for discounting the Questionnaire. Id.; Lanier v. Commissioner of Social Security, 252 Fed. Appx. 311, 313 (11th Cir. 2007); see, e.g., Brown v. Commissioner of Social Security, 442 Fed. Appx. 507, 512 (11th Cir. 2011) (law judge provided good cause to reject the treating physician's opinions stated in forms that did not reference his treatment records or adequately explain his opinions). Thus, Dr. Orvieto's notations of depression and anxiety do not meaningfully explain his opinions of debilitating mental functional limitations, he did not identify clinical

findings and objective signs supporting his opinion of severe mental impairments, and he did not reference any treatment notes that support his opinion (see Tr. 547-51). See, e.g., Longworth v. Commissioner of the Social Security Administration, 402 F.3d 591, 596 (6th Cir. 2005) (physician needs to translate how abnormal clinical findings affect functioning). Such an explanation is critical in this case where there is little objective evidence supporting mental functional limitations.

The law judge also reasonably discounted Dr. Orvieto's opinion of extreme mental limitations because they were not supported by the medical evidence of record. See Mason v. Commissioner of Social Security, 430 Fed. Appx. 830, 832 (11th Cir. 2011) ("Where the medical record contained a retrospective diagnosis, that is, a physician's post-insured-date opinion that the claimant suffered a disabling condition prior to the insured date, we affirm only when that opinion was consistent with pre-insured-date medical evidence."); Crawford v. Commissioner of Social Security, supra, 363 F.3d at 1159 (treating physician's report "may be discounted when it is not accompanied by objective medical evidence"). Finally, as the law judge noted, Dr. Orvieto is not a psychiatrist and, therefore, his opinion of extreme

-21-

mental functional limitations is clearly beyond his expertise. 20 C.F.R. 404.1527(c)(5).

Therefore, the law judge stated ample cause for discounting Dr. Orvieto's opinion of extreme mental functional limitations in the Questionnaire. Furthermore, the plaintiff fails to acknowledge and, therefore, he certainly does not undermine, the law judge's explanation for discounting Dr. Orvieto's opinion. Accordingly, he cannot rely on that opinion to support his argument.

In sum, the plaintiff has not identified evidence that compelled the law judge to find that the plaintiff had a severe mental impairment. See Adefemi v. Ashcroft, supra. Accordingly, the plaintiff's contention in this regard is meritless.

Moreover, as the plaintiff acknowledges (Doc. 15, p. 5), any purported failure in identifying the plaintiff's mental diagnoses as distinct severe impairments would be harmless because the law judge did not simply stop at step two of the sequential analysis based upon a finding of a non-severe impairment.   Rather, based upon her finding of other severe impairments, the law judge continued on in the sequential analysis and found

that the plaintiff was limited to performing a range of light work. Consequently, the plaintiff cannot prevail on this issue simply by showing that the law judge should have characterized his mental diagnoses as severe impairments.

Thus, the Eleventh Circuit has held that "step [two] acts as a filter; ... the finding of any severe impairment ... is enough to satisfy the requirement of step two." Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987); see also Tuggerson-Brown v. Commissioner of Social Security, 572 Fed. Appx. 949 (11th Cir. 2014). Accordingly, "there is no need for an ALJ to identify every severe impairment at step two .... [because] recognition of that as a fact would not, in any way, have changed the step-two analysis." Id. at 951.

Of course, "[w]hile the ALJ d[oes] not need to determine whether every alleged impairment [i]s 'severe,' [s]he [i]s required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation." Id. That principle was followed in this case, as the law judge stated that, in determining the plaintiff's residual functional capacity, she "consider[ed] all of the claimant's

-23-

impairments, including impairments that are not severe" (Tr. 13). <u>See</u>
<u>Tuggerson-Brown</u> v. <u>Commissioner of Social Security</u>, <u>supra</u> (statements by
the law judge indicating that he considered all the impairments, including
those that are non-severe, shows that the law judge considered all necessary
evidence).

Consequently, in order to demonstrate reversible error based
upon a mistake regarding the severity of an impairment, the plaintiff must
show that he had functional limitations from that condition that were not
included in the law judge's determination of the plaintiff's residual functional
capacity. That is the plaintiff's other contention.

B. Thus, the plaintiff argues that, even if the law judge
reasonably found that his mental impairments were non-severe, the law judge
erred by failing to include in the residual functional capacity mental
functional limitations (Doc. 15, p. 4). Specifically, the plaintiff asserts that,
because the law judge found that the plaintiff had mild limitations in activities
of daily living, social functioning, and concentration, persistence or pace, he
had some functional limitations and those should have been included in the
plaintiff's residual functional capacity (<u>id</u>., pp. 4-5).

-24-

The plaintiff reads more into a finding of a mild limitation than is warranted.  Under the regulations, the law judge only had relevant choices of "none," "mild" or "moderate." 20 C.F.R. 404.1520a(c)(4).  Thus, a finding of "mild" is not a nuanced one.

However, the law judge expressly found more specifically that the plaintiff's mental impairments "did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and was therefore nonsevere" (Tr. 15).  To iterate, the Eleventh Circuit has said that a non-severe impairment "has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, supra, 724 F.2d at 920.  Thus, the plaintiff's assertion that the "mild" findings meant he had some mental functional limitation is unpersuasive.

As indicated, the law judge recognized that in determining the residual functional capacity she had to "consider all of the claimant's impairments, including impairments that are not severe" (Tr. 13).  Further, after discussing the four broad functional areas, the law judge stated (Tr. 17-18):

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

In the residual functional capacity finding, the law judge did not include any functional limitations relating to a mental impairment. This demonstrates that the law judge concluded that the plaintiff did not have any functional limitations from his non-severe mental impairments. That conclusion, as discussed above, is based on a proper application of the governing legal principles, and is reasonable. In light of the mild limitations, which reflect that the conditions had such a minimal effect that they did not interfere with the plaintiff's ability to work, see 20 C.F.R. 404.1520a(d)(1), there were no limitations to be included in the residual functional capacity

relating to social functioning, activities of daily living, or concentration, persistence or pace.

Furthermore, the plaintiff does not identify any record evidence compelling the law judge to include in the residual functional capacity a particular mental functional limitation.   In this regard, the plaintiff argues that the law judge committed clear error by not asking the vocational expert the effect of mildly decreased concentration, persistence, or pace (Doc. 15, p. 9). However, "mildly impaired" concentration, persistence, or pace is not a specific functional limitation. Rather, as the law judge stated (Tr. 17-18), that is a description of the severity of the mental impairment, which then must be translated into a functional limitation, as the vocational expert is not a doctor and it is not apparent that that degree of impairment affects work capability. Thus, as stated above, "mild" generally means there are no work-related functional limitations necessary to accommodate the mental impairment.

The plaintiff also argues, citing to a proposed Social Security rule from 1991, that a mild restriction in task completion corresponds with "occasional difficulty in completing complex tasks, but usually completes simple tasks" (Doc. 15, p. 8).  That contention is meritless because, as

indicated, the applicable regulation and caselaw indicate mild limitations generally do not affect work-related functioning, and that legal authority obviously trumps a proposed Social Security rule that was not even adopted. See 20 C.F.R. 404.1520a(d)(1).

Finally, the plaintiff notes that the vocational expert testified that the plaintiff would be precluded from doing his prior work if the plaintiff was limited to "1-2 step instructions, performing simple, routine, repetitive tasks, and only occasionally being able to interact with the public" (Doc. 15, p. 10). However, such limitations are akin to moderate limitations in social functioning and concentration, persistence or pace, and the law judge did not find the plaintiff was moderately limited in any of the functional areas. Therefore, the law judge was not required to accept a response to a hypothetical question based on limitations that she did not find applicable to the plaintiff. See Crawford v. Commissioner of Social Security, supra, 363 F.3d at 1161. Thus, this contention fails as well.

In sum, the plaintiff fails to show that the evidence compelled the law judge to include any specific mental functional limitation in his residual functional capacity. See Adefemi v. Ashcroft, supra.[5]

IV.

For these reasons, the decision of the Commissioner is supported by substantial evidence and does not contain reversible error.   I, therefore, recommend that the decision be affirmed.

Respectfully submitted,

THOMAS G. WILSON
DATED: APRIL 2/, 2015      UNITED STATES MAGISTRATE JUDGE

NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date

---

[5]The plaintiff argues that the mental residual functional capacity must include a "detailed assessment of the individual's capacity to perform and sustain mental activities which are critical to work performance..." (Doc. 15, p. 6, citing SSR 85-16). To the extent that the plaintiff argues that the law judge did not comply with that ruling, such a contention is meritless. Thus, the law judge satisfies that ruling when she considers the four broad functional areas and renders a finding about the degree of limitation as to each category, Castel v. Commissioner of Social Security, 355 Fed. Appx. 260, 263 (11th Cir. 2009), which was done in this case (Tr. 16-17).

of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. 636(b)(1).